**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CONTINUOUS COMPOSITES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ANISOPRINT S.A.R.L., ANISOPRINT 3D PRINTING TECHNOLOGY (SUZHOU) LIMITED d/b/a FIBRESEEK, and SHENZHEN FIBRESEEK TECHNOLOGY CO., LTD.<br><br>Defendants. | ) | C.A. No. _______________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff CONTINUOUS COMPOSITES, INC. ("Continuous Composites" or "Plaintiff") brings this action for patent infringement against ANISOPRINT S.A.R.L., ANISOPRINT 3D PRINTING TECHNOLOGY (SUZHOU) LIMITED, d/b/a FIBRESEEK, and SHENZHEN FIBRESEEK TECHNOLOGY CO., LTD. (collectively, "Defendants"), on information and belief, and alleges as follows:

## NATURE OF THE CASE

1. This is an action for patent infringement. Plaintiff Continuous Composites develops continuous fiber additive manufacturing (also called "3D printing") technology. Continuous Composites invented its proprietary Continuous Fiber 3D Printing (CF3D®) technology. It has been awarded numerous patents for its innovative technology, including the patents at issue in this action.

2. Defendants make, use, sell, and offer to sell continuous fiber composite 3D printers that infringe Continuous Composites's patented inventions without Continuous Composites's

permission and without compensating Continuous Composites for the use of Continuous Composites's patented innovations.

3. This lawsuit is brought by Continuous Composites to end Defendants' unauthorized and infringing activities including, making, using, selling, offering to sell, and/or importing into the United States products and/or components that incorporate Continuous Composites's patented inventions, and inducing others to do so, without Continuous Composites's permission and without compensating Continuous Composites; and to recover damages adequate to compensate Continuous Composites for Defendants' unlawful and infringing actions.

**THE PARTIES**

4. Continuous Composites is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 215 E. Lakeside Ave., Coeur d'Alene, ID 83814.

5. Continuous Composites's proprietary CF3D® technology uses a continuous fiber and matrix in the printing process. CF3D® enables the automated manufacturing of continuous fiber composites in near-net shapes, offering precise control over fiber orientation and geometry. CF3D® is used in a range of advanced manufacturing applications, including defense, unmanned aerial vehicles, and hypersonic applications. Continuous Composites markets and sells its CF3D Enterprise® platform to customers, which implements the CF3D® technology.

6. In 2012, Continuous Composites filed the earliest patent application describing its ground-breaking new invention of continuous fiber 3D printing. Over time, Continuous Composites's patent portfolio has grown to over 120 allowed U.S. patents, including the Asserted Patents, and over 40 granted international patents.

7. After Continuous Composites introduced this groundbreaking technology into the market, competitors have followed suit by copying Continuous Composites's inventions and

marketing products that knowingly infringe Continuous Composites's patents. The Defendants in this action are among those infringing competitors.

8. Continuous Composites filed a lawsuit in this Court on July 7, 2021, *Continuous Composites, Inc. v. Markforged, Inc.*, D. Del. Case No. 1-21-cv-00998, against another infringing competitor, Markforged, Inc. Following a jury trial in April 2024, a unanimous jury rendered a verdict finding that Markforged infringed the '660 Patent and awarding Continuous Composites over $17.3 million in past damages for a limited period of just over two years of sales. In addition, while Markforged sought to invalidate several Continuous Composites patents in seven *inter partes* review proceedings before the United States Patent Office, Continuous Composites prevailed in all of the IPR proceedings. The Patent Office either denied institution of the IPRs or issued a final written decision finding that no challenged claims were unpatentable.

9. Following trial, Markforged and Continuous Composites reached a settlement, whereby Markforged agreed to pay Continuous Composites $25 million for a license to certain Continuous Composites intellectual property as well as granted a cross-license to Markforged's patent portfolio. https://investors.markforged.com/news-events/press-releases/detail/135/markforged-announces-settlement-in-ip-litigation

10. Continuous Composites's trial win on liability and substantial damages award, *inter partes* review wins, and Markforged's subsequent licensing all have validated the strength of Continuous Composites's patent portfolio covering its groundbreaking inventions involving continuous fiber 3D printing.

11. On information and belief, Anisoprint S.A.R.L is a Luxembourg entity organized and operating under the laws of Luxembourg, with its principal place of business at Technoport, 20 Rue du Commerce, 3895 Foetz Monnerich, Luxembourg.

12. On information and belief, Anisoprint 3D Printing Technology (Suzhou) Limited is a Chinese entity organized and operating under the laws of China, with its principal place of business at No. 59 Jiangnan Avenue, Changshu Economic and Technological Development Zone, Jiangsu, L-4362, China.

13. On information and belief, Shenzhen Fibreseek Technology Co., Ltd. is a Chinese entity organized and operating under the laws of China, with its principal place of business at Room 2596, Oriental Technology Building, No. 16 Keyuan Road, Kejiyuan Community, Yuehai Subdistrict, Nanshan District, Shenzhen, Guangdong Province 518000, China

14. On information and belief, the three Defendants are related companies and act in concert to make, sell, offer to sell, and import products that infringe the Asserted Patents.

15. On information and belief, Anisoprint 3D Printing Technology (Suzhou) Limited is doing business in the United States using the name "FibreSeek." For example, the Anisoprint LinkedIn page created a post "[i]ntroducing FibreSeek, our new brand" which would launch on Kickstarter in September 2025. https://www.linkedin.com/posts/anisoprint_fibreseek-fibreseeker3-continuousfibreforall-activity-7361047275734798338-sLkR. Under the name FibreSeek, Defendants created a Kickstarter project to fundraise and solicit pre-orders for the FibreSeeker 3 continuous fiber 3D printer in the United States. https://www.kickstarter.com/projects/1763117873/fibreseeker-3-the-first-personal-continuous-fibre-3d-printer.

**JURISDICTION AND VENUE**

16. This civil action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 100 et seq., including pursuant to 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has personal jurisdiction over Defendants at least because, based upon information and belief, Defendants have directly or indirectly through their subsidiaries, agents, and/or alter egos, availed themselves of the privilege of doing business in Delaware; Defendants maintain pervasive, continuous, and systematic contacts with Delaware; Defendants derive substantial revenue from the sale of products in Delaware; Defendants, directly or indirectly through its subsidiaries, agents, and/or alter egos, market, sell, or distribute products throughout Delaware; and Defendants further intend to, directly or indirectly through its subsidiaries, agents, and/or alter egos, market, sell, or distribute additional products throughout Delaware including, *inter alia*, the FibreSeeker 3.

18. Defendants have established minimum contacts with both the United States and Delaware such that subjecting Defendants to personal jurisdiction in this District will not offend traditional notions of fair play and justice. Defendants have purposely availed itself of the laws and protections of the United States and Delaware. On information and belief, Defendants have systematic and continuous contact with this forum at least because Defendants conduct business in this judicial district. For example, Defendants provide products to distributors and online retailers which sell the accused products in this District. By way of another example, Defendants actively solicit and accept orders from the United States and Delaware for the FibreSeeker 3. Continuous Composites's causes of action arise, at least in part, from Defendants' contacts with and activities in this judicial district.

19. Alternatively, this Court may exercise jurisdiction over Defendants under Fed. R. Civ. P. 4(k)(2) because Continuous Composites's claims arise under federal law; Defendants are foreign defendants not subject to personal jurisdiction in any state's court of general jurisdiction; and Defendants have sufficient contacts with the United States as a whole, including manufacturing, importing, offering to sell, or selling the Accused Products throughout the United States, such that exercising jurisdiction over Defendants is consistent with due process.

20. Venue is proper in this Court under 28 U.S.C. § 1391(c)(3) because Defendants are organized and operate under the laws of foreign jurisdictions and are not residents of the United States.

## BACKGROUND

21. Continuous Composites is the owner of the patents at issue in this action: U.S. Patent Nos. 9,511,543 (the "'543 Patent"); 10,603,836 (the "'836 Patent"); 10,744,708 (the "'708 Patent); 10,759,109 (the "'109 Patent"); 11,173,660 (the "'660 Patent"), 11,577,455 (the "'455 Patent"); 11,584,069 (the "'069 Patent"); 11,590,699 (the "'699 Patent"); 12,257,772 (the "'772 Patent"); and 12,403,651 (the "'651 Patent") (collectively, the "Asserted Patents").

22. On December 6, 2016, the United States Patent and Trademark Office duly and legally issued the '543 Patent entitled "Method and Apparatus for Continuous Composite Three-Dimensional Printing." A copy of the '543 Patent is attached as Exhibit 1.

23. Continuous Composites owns all substantial right, title, and interest in the '543 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

24. The claims of the '543 Patent are valid and enforceable.

25. On March 31, 2020, the United States Patent and Trademark Office duly and legally issued the ’836 Patent entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’836 Patent is attached as Exhibit 2.

26. Continuous Composites owns all substantial right, title, and interest in the ’836 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

27. The claims of the ’836 Patent are valid and enforceable.

28. On August 18, 2020, the United States Patent and Trademark Office duly and legally issued the ’708 Patent entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’708 Patent is attached as Exhibit 3.

29. Continuous Composites owns all substantial right, title, and interest in the ’708 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

30. The claims of the ’708 Patent are valid and enforceable.

31. On September 1, 2020, the United States Patent and Trademark Office duly and legally issued the ’109 Patent entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’109 Patent is attached as Exhibit 4.

32. Continuous Composites owns all substantial right, title, and interest in the ’109 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

33. The claims of the ’109 Patent are valid and enforceable.

34. On November 16, 2021, the United States Patent and Trademark Office duly and legally issued the ’660 Patent entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’660 Patent is attached as Exhibit 5.

35. Continuous Composites owns all substantial right, title, and interest in the ’660 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

36. The claims of the ’660 Patent are valid and enforceable.

37. On February 14, 2023, the United States Patent and Trademark Office duly and legally issued the ’455 Patent entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’455 Patent is attached as Exhibit 6.

38. Continuous Composites owns all substantial right, title, and interest in the ’455 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

39. The claims of the ’455 Patent are valid and enforceable.

40. On February 21, 2023, the United States Patent and Trademark Office duly and legally issued the ’069 Patent entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’069 Patent is attached as Exhibit 7.

41. Continuous Composites owns all substantial right, title, and interest in the ’069 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

42. The claims of the ’069 Patent are valid and enforceable.

43. On February 28, 2023, the United States Patent and Trademark Office duly and legally issued the ’699 Patent entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’699 Patent is attached as Exhibit 8.

44. Continuous Composites owns all substantial right, title, and interest in the ’699 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

45. The claims of the ’699 Patent are valid and enforceable.

46. On March 25, 2025, the United States Patent and Trademark Office duly and legally issued the ’772 Patent, entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’772 Patent is attached as Exhibit 9.

47. Continuous Composites owns all substantial right, title, and interest in the ’772 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

48. The claims of the ’772 Patent are valid and enforceable.

49. On September 2, 2025, the United States Patent and Trademark Office duly and legally issued the ’651 Patent, entitled “Method and Apparatus for Continuous Composite Three-Dimensional Printing.” A copy of the ’651 Patent is attached as Exhibit 10.

50. Continuous Composites owns all substantial right, title, and interest in the ’651 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

51. The claims of the ’651 Patent are valid and enforceable.

52. Defendants compete with Continuous Composites in the continuous fiber 3D printing industry.

53. Defendants manufacture, market, sell, and use several 3D printers that use a 3D printing technique Defendants refer to as Composite Fiber Co-extrusion (CFC) (the “Accused Products”). The Accused Products employ an extruder with two inlets and one nozzle. A composite fiber is directed through one channel and is coated in molten plastics supplied through another channel, forming a composite part reinforced with continuous fibers. Examples of the Accused Products include the Anisoprint Composer A3, Anisoprint Composer A4, Anisoprint Composer

Nova, and FibreSeeker 3 printers. The Accused Products are Defendants' flagship products and, on information and belief, are the primary contributors to Defendants' historical revenue.

54. On information and belief, Defendants instruct users of the Accused Products to operate the Accused Products to generate parts and objects using the CFC process. For example, Defendants' website provides instructions (*e.g.*, at https://support.anisoprint.com/composer/guide and https://support.anisoprint.com/composer/manual) which Defendants describe as guiding the "correct operation, maintenance, and troubleshooting of Composer CFC printers manufactured by Anisoprint." Defendants likewise offer setup guides, troubleshooting, and support for the FibreSeeker3D product (e.g., https://www.fibreseek3d.com/support.html). Defendants also offer training courses and materials (*e.g.*, at https://anisoprint.com/learning) which provide instructions to operate the Accused Products. On information and belief, Defendants—through at least the aforementioned resources—provide instructions on how to use the Accused Products to generate parts or objects using the CFC process.

55. On information and belief, third parties including manufacturers, engineers, and other customers of Defendants have used and continue to use the Accused Products as directed by Defendant. For example, Defendant's website (e.g., at https://anisoprint.com/cases) indicates use of Defendants' products, which include the Accused Products, in the "[a]erospace, automotive, manufacturing, robotics, high-performance mobility, [and] healthcare industries". Similarly, Defendants' website https://www.fibreseek3d.com/about.html states that Defendants "Service[] Renowned Brands" and includes logos of several prominent companies in the electronics and automotive fields.

56. On information and belief, critical components of the Accused Products, including at least the composite (CFC) extruder, have substantially no other use other than to generate parts or objects using the CFC process.

57. Defendants have been on notice of the Asserted Patents and of their infringement of those patents since before this lawsuit was filed. Indeed, Continuous Composites has tried, repeatedly, to engage Defendants in good faith licensing discussions, only for Defendants to stall and ultimately ignore Continuous Composites, all while continuing to develop and sell new infringing products with full knowledge of Continuous Composites's Asserted Patents and of Defendants' infringement.

58. Since 2023, Ryan Stockett, Continuous Composites's Vice President of IP and Technology, has communicated with Defendants about Continuous Composites's patented and propriety technology and Defendants' need to license that technology. In 2023, Mr. Stockett sent correspondence to Fedor Antonov, who at that time was on information and belief the CEO of Defendant Anisoprint S.A.R.L. In that correspondence, Mr. Stockett identified several Continuous Composites patents, including several of the Asserted Patents: the '542, '836, '708, '109, '660, '455, '069, and '699 Patents. Mr. Stockett invited Defendants to engage in discussions about Defendants obtaining a license from Continuous Composites so that Defendants may continue to use and offer its additive manufacturing solutions to its customers in the U.S. using the appropriate rights.

59. Mr. Stockett continued to engage in discussions with Defendants afterwards, including sending a licensing term sheet dated June 15, 2024. Although Defendants initially engaged in some discussions with Continuous Composites, following Mr. Stockett's communication of the term sheet in June 2024, Defendants failed to provide a substantive response. Since then, Continuous Composites has attempted repeatedly to engage in a business discussion with Defendants about licensing Continuous Composites's patents only to be dismissed or ignored.

60. For example, Continuous Composites, through counsel, wrote a letter to Defendants dated January 24, 2025. Continuous Composites sent the letter to Ryan Liu and Fedor Antonov, who upon information and belief were at that time the CEO and CTO of Defendants, respectively. Continuous Composites described the outcome of the lawsuit against Markforged discussed above, which was already known to Defendants from prior correspondence between the parties, again identified representative patents from the Continuous Composites portfolio, including the ’542, ’836, ’708, ’109, ’660, ’455, ’069, and ’699 Patents, and requested Defendants provide a substantive response to Continuous Composites’s licensing proposal. Continuous Composites received no response to its January 24, 2025 letter.

61. On March 13, 2025, Continuous Composites sent another letter through counsel again requesting Defendants’ substantively respond to Continuous Composites’s term sheet provided June 15, 2024. Continuous Composites notified Defendants that failure to respond by March 27, 2025 would result in Continuous Composites proceeding with the understanding that Defendants were not willing to engage in good-faith licensing negotiations. Continuous Composites received no response to its March 13, 2025 letter.

62. Since then, Continuous Composites repeatedly has attempted to engage the Defendants in good-faith licensing negotiations, including having several discussions with Ryan Liu, who is on information and belief Defendants’ founder and CEO, along with other representatives of Defendants. During these discussions, Continuous Composites has provided Defendants with exemplary claim charts showing evidence of Defendants’ infringement of Continuous Composites’s patents. Yet Defendants still have refused to license any Continuous Composites patents, while also not providing any substantive reasons why Defendants’ products do not infringe Continuous Composites’s patents.

63. Despite their silence, Defendants have not refrained from their infringing activity; instead, they have doubled down by expanding their infringing product line and aggressively marketing those products in the United States. For example, on or about August 13, 2025, Defendants began marketing the infringing "FibreSeeker 3" product, which Defendants touted as the "First Consumer Continuous Fibre 3D printer." Defendants marketed the same benefits and features, and advantages over prior methods, as those taught in the Asserted Patents and embodied in CF3D® technology. For instance, Defendants explained that their continuous fiber printing technology, which they called "Composite Fiber Coextrusion" or "CFC," was different from "chopped fiber or filled filaments" because it "places full-length fibers precisely where strength is needed – layer by layer." Defendants lauded this technology as allowing for stronger and yet more lightweight parts.

64. Defendants also advertised that the price of the FibreSeeker 3 product would be less than 10% of the price of an "industrial continuous fibre printer." The reason why Defendants could offer a product at such a dramatic price cut is that Defendants are using Continuous Composites's technology and benefiting from over 13 years of Continuous Composites's innovation in the field, without compensating Continuous Composites whatsoever.

65. The '772 and '651 Patents are in the same family as the other Asserted Patents. Given the years of communications between the parties regarding Continuous Composites's patent portfolio, on information and belief, Defendants knew of these related patents and their infringement of the same on or around the time that those patents issued, or at minimum, willfully blinded themselves to the existence of these two patents and Defendants' infringement of them.

66. Accordingly, even before the filing date of the Complaint, Defendants had actual knowledge of Continuous Composites's patents, including at least Asserted Patents; as well as

Defendants' infringement of the same. At minimum Defendants willfully blinded themselves to the existence of Continuous Composites's patent claims and Defendants' infringement.

**COUNT I**

**DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 9,511,543**

67. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

68. On information and belief, Defendants have directly infringed and continue to directly infringe claims of the '543 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 11

69. Defendants have indirectly infringed, and continue to indirectly infringe, the '543 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the '543 Patent and with knowledge that others (including Defendants' customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the '543 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants' customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the '543 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

70. Defendants contribute to direct infringement of the '543 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material

components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the ’543 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

71. Defendants received actual notice of its infringement of the ’543 Patent at least as early as on or about July 18, 2023 (the “Notice Date”) and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before the Notice Date, Defendants had actual knowledge of the ’543 Patent or at minimum willfully blinded themselves to the existence of the ’543 Patent and Defendants’ infringement.

72. For the same reasons that Defendants know its own acts infringe the ’543 Patent, Defendants also know that its customers and end users’ use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users’ infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the ’543 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

73. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants’ infringement of the ’543 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

74. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants

will continue their infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants' infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants' further infringement.

75. Defendants' infringement of the '543 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants' intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

## DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 10,603,836

76. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

77. On information and belief, Defendants have directly infringed and continue to directly infringe each and every element of at least claims 1, 6, and 8 of the '836 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 12.

78. Defendants have indirectly infringed, and continue to indirectly infringe, the '836 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the '836

Patent and with knowledge that others (including Defendants' customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the '836 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants' customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the '836 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

79. Defendants contribute to direct infringement of the '836 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the '836 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

80. Defendants received actual notice of its infringement of the '836 Patent at least as early as the Notice Date and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before the Notice Date, Defendants had actual knowledge of the '836 Patent or at minimum willfully blinded itself to the existence of the '836 Patent and Defendants' infringement.

81. For the same reasons that Defendants know their own acts infringe the '836 Patent, Defendants also know that its customers and end users' use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users' infringing activities since at least the Notice Date. On information and belief, Defendants have been aware

of the ’836 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

82. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants’ infringement of the ’836 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

83. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue their infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants’ infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants’ further infringement.

84. Defendants’ infringement of the ’836 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants’ intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III

## DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 10,744,708

85. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

86. On information and belief, Defendants have directly infringed and continue to directly infringe claims of the '708 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 13.

87. Defendants have indirectly infringed, and continue to indirectly infringe, the '708 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the '708 Patent and with knowledge that others (including Defendants' customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the '708 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants' customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the '708 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

88. Defendants contribute to direct infringement of the '708 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder.

Said components have been especially made or especially adapted by Defendants for use in infringement of the ’708 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

89. Defendants received actual notice of its infringement of the ’708 Patent at least as early as the Notice Date and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before the Notice Date, Defendants had actual knowledge of the ’708 Patent or at minimum willfully blinded itself to the existence of the ’708 Patent and Defendants’ infringement.

90. For the same reasons that Defendants know their own acts infringe the ’708 Patent, Defendants also know that its customers and end users’ use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users’ infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the ’708 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

91. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants’ infringement of the ’708 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

92. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue their infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants’ infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no

adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants' further infringement.

93. Defendants' infringement of the '708 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants' intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT IV**

**DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 10,759,109**

94. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

95. On information and belief, Defendants have directly infringed and continue to directly infringe claims of the '109 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 14.

96. Defendants have indirectly infringed, and continue to indirectly infringe, the '109 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the '109 Patent and with knowledge that others (including Defendants' customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the '109

Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants' customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the '109 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

97. Defendants contribute to direct infringement of the '109 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the '109 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

98. Defendants received actual notice of its infringement of the '109 Patent at least as early as the Notice Date and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before the Notice Date, Defendants had actual knowledge of the '109 Patent or at minimum willfully blinded itself to the existence of the '109 Patent and Defendants' infringement.

99. For the same reasons that Defendants know their own acts infringe the '109 Patent, Defendants also know that its customers and end users' use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users' infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the '109 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

100. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants' infringement of the '109 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

101. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue its infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants' infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants' further infringement.

102. Defendants' infringement of the '109 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants' intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V

## DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 11,173,660

103. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

104. On information and belief, Defendants have directly infringed and continue to directly infringe claims of the '660 Patent under 35 U.S.C. § 271(a), either literally or under the

doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 15.

105. Defendants have indirectly infringed, and continue to indirectly infringe, the '660 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the '660 Patent and with knowledge that others (including Defendants' customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the '660 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants' customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the '660 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

106. Defendants contribute to direct infringement of the '660 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the '660 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

107. Defendants received actual notice of its infringement of the '660 Patent at least as early as the Notice Date and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even

before the Notice Date, Defendants had actual knowledge of the ’660 Patent or at minimum willfully blinded themselves to the existence of the ’660 Patent and Defendants’ infringement.

108. For the same reasons that Defendants know their own acts infringe the ’660 Patent, Defendants also know that its customers and end users’ use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users’ infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the ’660 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

109. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants’ infringement of the ’660 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

110. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue their infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants’ infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants’ further infringement.

111. Defendants’ infringement of the ’660 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights.

Defendants' intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VI

## DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 11,577,455

112. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

113. On information and belief, Defendants have directly infringed and continue to directly infringe claims of the '455 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 16.

114. Defendants have indirectly infringed, and continue to indirectly infringe, the '455 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the '455 Patent and with knowledge that others (including Defendants' customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the '455 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants' customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the '455 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

115. Defendants contribute to direct infringement of the ’455 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the ’455 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

116. Defendants received actual notice of its infringement of the ’455 Patent at least as early as the Notice Date and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before the Notice Date, Defendants had actual knowledge of the ’455 Patent or at minimum willfully blinded itself to the existence of the ’455 Patent and Defendants’ infringement.

117. For the same reasons that Defendants know its own acts infringe the ’455 Patent, Defendants also know that its customers and end users’ use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users’ infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the ’455 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

118. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants’ infringement of the ’455 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

119. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue their infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants' infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants' further infringement.

120. Defendants' infringement of the '455 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants' intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VII

## DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 11,584,069

121. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

122. On information and belief, Defendants have directly infringed and continue to directly infringe claims of the '069 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 17.

123. Defendants have indirectly infringed, and continue to indirectly infringe, the ’069 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the ’069 Patent and with knowledge that others (including Defendants’ customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the ’069 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants’ customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the ’069 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

124. Defendants contribute to direct infringement of the ’069 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the ’069 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

125. Defendants received actual notice of its infringement of the ’069 Patent at least as early as the Notice Date and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before the Notice Date, Defendants had actual knowledge of the ’069 Patent or at minimum willfully blinded themselves to the existence of the ’069 Patent and Defendants’ infringement.

126. For the same reasons that Defendants know their own acts infringe the ’069 Patent, Defendants also know that its customers and end users’ use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users’ infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the ’069 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

127. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants’ infringement of the ’069 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

128. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue their infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants’ infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants’ further infringement.

129. Defendants’ infringement of the ’069 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants’ intentional, knowing, and willful infringement entitles Continuous Composites to

increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT VIII

## DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 11,590,699

130. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

131. On information and belief, Defendants have directly infringed and continue to directly infringe claims of the '699 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 18.

132. Defendants have indirectly infringed, and continue to indirectly infringe, the '699 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the '699 Patent and with knowledge that others (including Defendants' customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the '699 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants' customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the '699 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

133. Defendants contribute to direct infringement of the '699 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material

components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the ’699 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

134. Defendants received actual notice of its infringement of the ’699 Patent at least as early as the Notice Date and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before the Notice Date, Defendants had actual knowledge of the ’699 Patent or at minimum willfully blinded itself to the existence of the ’699 Patent and Defendants’ infringement.

135. For the same reasons that Defendants know their own acts infringe the ’699 Patent, Defendants also know that its customers and end users’ use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users’ infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the ’699 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

136. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants’ infringement of the ’699 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

137. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue their infringing activities damaging Continuous Composites unless and until

enjoined by this Court. Due to Defendants' infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants' further infringement.

138. Defendants' infringement of the '699 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants' intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IX

## DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 12,257,772

139. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

140. On information and belief, Defendants have directly infringed and continue to directly infringe each and every element of at least claims 1-6 and 10 of the '772 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants' infringement is attached as Exhibit 19.

141. Defendants have indirectly infringed, and continue to indirectly infringe, the '772 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the '772 Patent and with knowledge that others (including Defendants' customers and end users) will use

the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the ’772 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants’ customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the ’772 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

142. Defendants contribute to direct infringement of the ’772 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the ’772 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

143. Defendants received actual notice of its infringement of the ’772 Patent at least as early as on or about December 12, 2025, and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before that date, Defendants had actual knowledge of the ’772 Patent or at minimum willfully blinded itself to the existence of the ’772 Patent and Defendants’ infringement.

144. For the same reasons that Defendants know its own acts infringe the ’772 Patent, Defendants also know that its customers and end users’ use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users’ infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the ’772 Patent and that the activities of its customers and end users constituted infringement,

or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

145. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants' infringement of the '772 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

146. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue their infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants' infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants' further infringement.

147. Defendants' infringement of the '772 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants' intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT X

## DEFENDANTS' INFRINGEMENT OF U.S. PAT. NO. 12,403,651

148. Continuous Composites incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

149. On information and belief, Defendants have directly infringed and continue to directly infringe each and every element of at least claim 6 of the ’651 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by, using in the United States without authority the Accused Products that perform the CFR process. A claim chart detailing examples of Defendants’ infringement is attached as Exhibit 20.

150. Defendants have indirectly infringed, and continue to indirectly infringe, the ’651 Patent under 35 U.S.C. § 271(b) by actively, knowingly, and intentionally inducing infringement by others, such as end-users or customers of the Accused Products, with knowledge of the ’651 Patent and with knowledge that others (including Defendants’ customers and end users) will use the Accused Products to 3D print objects using the CFC technology in a manner that directly infringes, either literally and/or under the doctrine of equivalents, one or more claims of the ’651 Patent. Defendants had and have the specific intent to encourage the acts of direct infringement by teaching (including Defendants’ customers and end users) to use the Accused Products in a manner that Defendants knew and knows infringes the ’651 Patent, by, for example, instructing those end-users or customers how to generate parts or objects using the CFC technology through the instructions, training courses, and manuals described herein.

151. Defendants contribute to direct infringement of the ’651 Patent by others (including its customers and end users) under 35 U.S.C. § 271(c), including by providing discrete, material components of the Accused Products to its customers for installation or replacement. Components of the Accused Products provided by Defendants to others include at least the composite extruder. Said components have been especially made or especially adapted by Defendants for use in infringement of the ’651 Patent and are not suitable for any substantial non-infringing use as their purpose is using the CFC technology to manufacture parts or objects using the CFC process.

152. Defendants received actual notice of its infringement of the ’651 Patent at least as early as on or about December 12, 2025, and have continued to make, use, sell, offer to sell and/or import the Accused Products, and/or induce others to do so, and/or contribute to infringement by others. Even before that date, Defendants had actual knowledge of the ’651 Patent or at minimum willfully blinded themselves to the existence of the ’651 Patent and Defendants’ infringement.

153. For the same reasons that Defendants know their own acts infringe the ’651 Patent, Defendants also know that its customers and end users’ use likewise infringes the Asserted Patents. Defendants have been aware of the Asserted Patents and its customers and end users’ infringing activities since at least the Notice Date. On information and belief, Defendants have been aware of the ’651 Patent and that the activities of its customers and end users constituted infringement, or at minimum willfully blinded itself to these facts, even before the filing of the Original Complaint, as stated above.

154. Continuous Composites has suffered, and continues to suffer, damages as a result of Defendants’ infringement of the ’651 Patent. The extent of damage suffered by Continuous Composites and caused by Defendants is not yet known, but the damage is substantial and will be determined at trial.

155. In addition, Continuous Composites and Defendants are direct competitors in an emerging market where technology is a key differentiator. On information and belief, Defendants will continue their infringing activities damaging Continuous Composites unless and until enjoined by this Court. Due to Defendants’ infringement, Continuous Composites has suffered, is suffering, and will continue to suffer irreparable injury for which Continuous Composites has no adequate remedy at law, including but not limited to customer confusion, harm to reputation, and loss of goodwill. Continuous Composites is therefore entitled to a preliminary and permanent injunction against Defendants’ further infringement.

156. Defendants' infringement of the '651 Patent after learning that Continuous Composites developed and patented the technology disclosed in the Asserted Patents has been, and continues to be, willful, deliberate, and in disregard of Continuous Composites patent rights. Defendants' intentional, knowing, and willful infringement entitles Continuous Composites to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **JURY DEMAND**

Under Federal Rule of Civil Procedure 38(b), Continuous Composites demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

Continuous Composites respectfully prays for relief as follows:

A. a judgment that Defendants have infringed and continue to infringe one or more claims of the Asserted Patents;

B. a judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

C. a preliminary and permanent injunction issued against Defendants and its agents, officers, directors, employees, attorneys, successors, and assigns, all parent and subsidiary entities, and all those acting for or on the behalf of Defendants, or in active concert, participation, or combination with them, including customers and distributors, prohibiting Defendants from:

i. continuing acts of infringement of the Asserted Patents;

ii. making, using, selling, and/or importing infringing products, to include any colorable imitation thereof; and

iii. otherwise infringing the Asserted Patents.

D. judgment awarding Plaintiff all damages adequate to compensate for Defendants' infringement, and in no event less than a reasonable royalty for Defendants' infringement, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

E. a judgment awarding Plaintiff treble damages pursuant to 35 U.S.C. § 284 as a result of Defendants' willful conduct;

F. a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable Attorneys' Fees and Taxable Costs incurred in connection with this action, pursuant to 35 U.S.C. § 285; and

G. for such additional and further relief in law and equity, as the Court may deem just and proper.

/s/Kelly E. Farnan
Kelly E. Farnan (#4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Plaintiff Continuous Composites, Inc.*

OF COUNSEL:

Robert S. Shwarts
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, California 91105
Tel: (415) 773-5700
Fax: (415) 773-5759
rshwarts@orrick.com

T. Vann Pearce, Jr.
Christopher J. Higgins
Orrick, Herrington & Sutcliffe LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037f
Tel: (202) 339-8400
Fax: (202) 339-8500
vpearce@orrick.com
chiggins@orrick.com

Dated: August 7, 2026